UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRETT A. BENNETT, individually and
as Personal Representative of the
Estate of Terri Rene Bennett,
Deceased; and as next friend of TAB,
and EEB, minors

        Plaintiff,

v.                                        Case No: 2:06-cv-72-FtM-38DNF

FOREST LABORATORIES,

        Defendant.
_____/

## **ORDER**[1]

This matter comes before the Court on Defendant Forest Laboratories, LLC's Motion for Summary Judgment Based on Federal Preemption (Doc. #73) filed on January 5, 2015. Plaintiff Brett A. Bennett filed a response in opposition on January 29, 2015. (Doc. #87). This matter is now ripe for review.

**Allegations and Procedural Background**

On February 2, 2006, Plaintiff Brett A. Bennett, individually and as personal representative of the Estate of Terri Renè Bennett, initiated this action against Defendant Forest Laboratories, LLC. (Doc. #1). Forest Laboratories is a pharmaceutical company that designed, manufactures, and markets LEXAPRO. (Doc. #1, at ¶3).

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Some drugs classified as "selective serotonin reuptake inhibitors" (hereinafter "SSRI"), such as LEXAPRO, have been scrutinized and associated with suicide. (Doc. #1, at ¶¶10, 14). In light of such concern Bennett alleges Forest Laboratories could and should have issued a warning about LEXAPRO with regard to it possibly inducing suicide or other precursor effects such as akathisia, disinhibition, and mania. (Doc. #1, at ¶17). Bennett alleges Forest Laboratories failed to comply with FDA and Florida warning requirements. (Doc. #1, at ¶27). In addition, Bennett alleges Forest Laboratories withheld from or misrepresented material information to the FDA. (Doc. #1, at ¶28).

Pursuant to a medical prescription, Terri Renè consumed LEXAPRO. (Doc. #1, ¶33). A short time after the start of her use of LEXAPRO, Terri Renè committed suicide. (Doc. #1, at ¶36). Due to her suicide, Bennett brings three cause of actions against Forest Laboratories. The first cause of action alleges pursuant to the Restatement of Torts, Forest Laboratories is strictly liable for designing and manufacturing a defective product; and for marketing it with inadequate and legally defective labeling via material misrepresentations. (Doc. #1, at ¶37). The second cause of action alleges Forest Laboratories is liable because LEXAPRO was defective and potentially harmful to its consumer, including Terri Renè, and because adequate warnings were not provided with the product or after manufacture. (Doc. #1, at ¶38). The third cause of action alleges Forest Laboratories is liable because it was negligent for failing to warn and test the association between LEXAPRO and suicide. (Doc. #1, at ¶39). Forest Laboratories' alleged negligence is the proximate cause of Terri Renè's injuries and death. (Doc. #1, at ¶39).

This matter was transferred to the Multi-District Litigation Panel on April 16, 2006. (Doc. #16). It was remanded and reassigned to the undersigned on September 5, 2013. (Doc. #17; Doc. #18).

In this instant motion, Forest Laboratories moves for Rule 56 summary judgment based on federal preemption. Forest Laboratories asserts Bennett's claims are preempted under the Supremacy Clause of the United States Constitution as they conflict with the provisions of the Federal Food, Drug, and Cosmetic Act and the FDA regulations. Bennett opposes the motion.

**Facts**

The FDA approved Forest Laboratories' new drug application for LEXAPRO for the treatment of major depressive disorder on August 14, 2002, and for the treatment of generalized anxiety disorder on December 18, 2003. (Doc. #78-43, at ¶¶6-7, 9-10; Doc. #78-4; Doc. #78-5; Doc. #78-7; Doc. #78-8). As it relates to this litigation, the final printed label following the approval of LEXAPRO for treatment of generalized anxiety disorder was submitted to the FDA on January 20, 2004. (Doc. #78-43, at ¶11; Doc. #78-9).

In 2004, the FDA began increasing its warning requirements for SSRI drugs like LEXAPRO. For example, in March 2004, the FDA issued a Talk Paper and Public Health Advisory and asked manufacturers to include a statement recommending, "close observation of adult and pediatric patients [] for worsening depression or the emergence of suicidality." (Doc. #79-31; Doc. #79-32). Then later in October 2004, the FDA required SSRI sponsors to include a black box warning regarding the increased risk of suicidality. (Doc. #79-33). In the fall of 2004, FDA requested that SSRI sponsors provide proposed black box warnings. (Doc. #78-30). The FDA was interested in using to some degree a

standardized black box warning for SSRI drugs. (Doc. #78-33) ("We have asked all sponsors to use the same language, modified only to reflect differences related to approved effectiveness claims."). In late 2004, Forest Laboratories presented a proposed warning that removed the black box warning. (Doc. #78-31) ("please find Forest's response and rationale to the modifications made to FDA's request (Attachment 1) which includes the removal of the black box warning. Forest understands that the removal of the black box warning may not be possible, however we would appreciate the Division's careful consideration to the other modifications."). Forest Laboratories' proposed label, as it somewhat predicted, was approved in part and rejected in part. (Doc. #78-33) ("We have completed our review of your applications . . . and have concluded that your application is approvable."). The FDA developed a different standardized label for SSRI drugs. (Doc. #78-33) (FDA required a black box warning, changes to product labeling, and the addition of a Medication Guide pertaining to suicidality).[2] As time progressed, the advisory and warning requirements for SSRI drugs like LEXAPRO increased with regard to its relationship to suicide. (See, e.g., Doc. #79-34).

## Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby,

---

[2] Forest Laboratories fails to provide the proposed warning label for the Court to evaluate the differences between it and the later standardized label. The evidence, however, demonstrates that FDA used a stronger warning than what was proposed by Forest Laboratories.

4

Inc., 477 U.S. 242, 248 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999). Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. Celotex, 477 U.S. at 322-23. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**Discussion**

The Supremacy Clause of the United States' Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI. When state and federal law "directly conflict," state law must give way. PLIVA, Inc. v. Mensing, 131 S.Ct. 2567, 2577 (2011) (citing Wyeth v. Levine, 555 U.S. 555, 583 (2009)). State and federal law conflict where it is "impossible for a private party to comply with both state and federal requirements." Id. (quoting Freightliner Corp. v. Myrick, 514 U.S. 280, 287).

Forest Laboratories takes issue with one of Bennett's witnesses, Dr. Michael Hammrell. According to Forest Laboratories, Hammrell contends Forest Laboratories should have: (1) added a black box warning to LEXAPRO labels before 2004; (2) prepared and distributed a Medication Guide directly to patients before 2004; and (3) changed the warning section of the LEXAPRO label to add language about monitoring. Forest Laboratories argues it was prohibited by federal law to unilaterally take such actions. Since Forest Laboratories must receive FDA approval before issuing black box warnings, Medication Guides, and changing labels, Forest Laboratories argues Bennett's claims are preempted. In addition, Forest Laboratories argues adding monitoring language was impossible because it needed FDA approval first and the suggestive warning by Hammrell is not related to the use of the product. Lastly, Forest Laboratories asserts there was no scientific support to add the black box warning. To support its argument, Forest Laboratories relies on Mensing and Wyeth. See PLIVA, Inc. v. Mensing, 131 S.Ct. 2567 (2011); Wyeth, 555 U.S. 555.

Bennett argues to the contrary. Bennett argues Forest Laboratories cannot prove that the FDA clearly would have rejected a new label because in the months after Terri Renè's death the FDA required additional warnings. Bennett argues Forest Laboratories never attempted to add a warning of an increased risk prior to February 2004, and as a result its argument now is hypothetically based. Bennett argues a recent Multidistrict Litigation order is persuasive. See In re Celexa and Lexapro Prods. Liab. Litig., MDL 1736, 2013 WL 791784, at *5-6 (E.D. Mo. Mar. 4, 2013). Bennett argues there is evidence that shows LEXAPRO presented a great risk of increased suicidality in adults. Finally, Bennett argues that Forest Laboratories' opposition to the October 2004 FDA's black box warning requirement does not render it a rejection by the FDA.

Upon consideration, the Court finds Forest Laboratories' reliance on Mensing to be misplaced in light of the facts and circumstances in the instant case. In Mensing, two plaintiffs initiated state tort actions against generic drug manufacturers alleging that long term use of a drug, metoclopramide, caused a severe disorder, tardive dyskinesia, and that the manufacturers were liable for failing to provide adequate warning under state tort law (Louisiana and Minnesota). See Mensing, 131 S. Ct. at 2572-73. The manufacturing company in response argued federal statutes and FDA required generic drug manufacturers to use the same warning labels as its brand-name counterparts. Id. at 2573. As a result, it was impossible to simultaneously comply with both federal and any state tort-law duty that required them to use a different label. Id. After comparing the relative state and federal law requirements and assuming the plaintiffs' allegations were true,[3] the Supreme Court found state law required the generic drug manufacturers to use

---

[3] "Mensing and Demahy have pleaded that the Manufacturers knew or should have known of the high risk of tardive dyskinesia inherent in the long-term use of their product. They have also pleaded that the

7

a different and safer label than the brand-name manufacturer. Id. at 2574. Since it was impossible to comply with both state and federal laws, state law was preempted. Id. at 2577-78.

The instant case is distinguishable from Mensing in several ways. For example, here Forest Laboratories is not a generic drug manufacturer that is required to maintain the same warning label as a parallel brand name warning label.[4] Id. at 2575 ("generic drug manufactures have an ongoing federal duty of 'sameness.'"). Forest Laboratories could have participated in the changes-being-effected ("CBE") process, or other similar processes, which allows drug manufacturers to change labels when necessary. Id. Since the CBE process allows drug manufacturers to immediately make labeling changes without preapproval of the FDA, Forest Laboratories' impossibility argument is unpersuasive. Id. ("When making labeling changes using the CBE process, drug manufacturers need not wait for preapproval by the FDA, which ordinarily is necessary to change a label.") (citation omitted).

The law is clear in that drug manufacturers have a continuing obligations to propose stronger warning labels to the FDA when needed. Id. at 2576; see also Wyeth, 555 U.S. at 570-71 (reaffirming that the manufacturer and not the FDA bears responsibility for the content of its label at all times). Forest Laboratories has not shown it attempted to provide a stronger warning language, even if it was later rejected by the FDA. Rather, Forest Laboratories merely shows it provided a proposed change to the

---

Manufacturers knew or should have known that their labels did not adequately warn of that risk . . . The parties do not dispute that, if these allegations are true, state law required the Manufacturers to use a different, safer label." Mensing, 131 S.Ct. at 2574.

[4] The generic version of LEXAPRO was not approved until 2012, as a result, it is clear to the Court that Forest Laboratories is not the generic manufacturer and it does not maintain that it is the generic manufacturer. See **www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm296006.htm**

warning that was later trumped and made stronger by a standardized black box warning label. The Court also cannot assume the FDA would have rejected Forest Laboratories' proposed black box warning label in the context of Wyeth. Definitively, Forest Laboratories has presented no clear evidence that the FDA would not have approved a change to the drug label. Muzichuck v. Forest Labs., Inc., Civil Action No. 1:07CV16, 2015 WL 235226, at *7 (N.D. W.V. Jan. 16, 2015) ("Justice Stevens suggested that the presentation of 'clear evidence that the FDA would not have approved a change to [the drug's] label' might form the basis for impossibility preemption.") (quoting Wyeth, 555 U.S. at 571); cf. In re Fosamax (Alendronate Sodium) Prods. Liab. Litig., 951 F. Sup. 2d 695, 701-03 (finding preemption because there was clear evidence that FDA would not have provided a change since FDA rejected proposed label change after plaintiff's injury). Lastly, the Court finds Forest Laboratories' scientific support assertion to be unpersuasive for the purposes of this motion.

The Court finds no conflict with state and federal law. As a result, preemption is not a viable defense here. The motion for summary judgment is due to be denied. The Court's finding is in good company. See, e.g., Muzichuck, 2015 WL 235226, at *8 ("the Court rejects Forest's impossibility preemption defense"); Koho v. Forest Labs., Inc., 17 F. Supp. 3d 1109, 1119 (W.D. Wash. 2014) (granting plaintiff's motion for summary judgment on defendants' affirmative preemption defense); Wells v. Allergan, Inc., 2013 WL 389147, at *7 (W.D. Okla. Jan. 31, 2013) ("even if federal regulations would have prevented Allergan from altering Botox's label, it still would not have been 'impossible' for Defendant to comply with both federal and state law.").

Accordingly, it is now

9

**ORDERED:**

Forest Laboratories, LLC's Motion for Summary Judgment Based on Federal Preemption (Doc. #73) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 27th day of March, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

10