UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRETT A. BENNETT, individually and as Personal Representative of the Estate of Terri Rene Bennett, Deceased; and as next friend of TAB, and EEB, minors

      Plaintiff,

v.                                  Case No:  2:06-cv-72-FtM-38DNF

FOREST LABORATORIES,

      Defendant.
_____/

## **ORDER**[1]

This matter comes before the Court on Forest Laboratories, LLC's Motion for Summary Judgment (Doc. #74) filed on January 5, 2015. Brett A. Bennett filed a response in opposition on January 30, 2015. (Doc. #89). Forest Laboratories filed a Notice of Supplemental Authority on April 7, 2015. (Doc. #155). Bennett filed a Notice of Supplemental Authority on April 10, 2015. (Doc. #160). This matter is ripe for review.

Facts

In 2004, Terri Renè was a 40 year old wife and mother. Due to medical issues, Terri Renè's treating doctor, Dr. Cynthia Lukasiewicz, prescribed her Lexapro, a selective serotonin reuptake inhibitor ("SSRI") drug. Prior to this Lexapro prescription, Terri Renè ingested other SSRI drugs, such as Paxil and Prozac. At the time Lukasiewicz prescribed

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Lexapro to Terri Renè, Lukasiewicz was aware that SSRI drugs have some relationship to suicidality in certain patients. Meanwhile, Terri Renè had suicide risk factors, such as a history of depression, migraines, and gastrointestinal issues. Tragically, soon after Terri Renè started consuming Lexapro, she committed suicide in February 2004.

Forest Laboratories was the Lexapro sponsor to the U.S. Food and Drug Administration ("FDA"). Forest Laboratories also markets and drafts the warnings for Lexapro. After Terri Renè's death, the FDA required a stronger warning with regard to SSRI drugs and Lexapro specifically.

In light of her death, Terri Renè's estate brought a three count complaint against Forest Laboratories. (See Doc. #1). The first cause of action alleges pursuant to the Restatement of Torts, Forest Laboratories is strictly liable for designing and manufacturing a defective product; and for marketing it with inadequate and legally defective labeling via material misrepresentations. (Doc. #1, at ¶37). The second cause of action alleges Forest Laboratories is liable because Lexapro was defective and potentially harmful to its consumers, including Terri Renè, and because adequate warnings were not provided with the product or after manufacture. (Doc. #1, at ¶38). The third cause of action alleges Forest Laboratories is liable because it was negligent for failing to warn and test the association between Lexapro and suicide. (Doc. #1, at ¶39), and that Forest Laboratories' alleged negligence is the proximate cause of Terri Renè's injuries and death. (Doc. #1, at ¶39).

This matter was transferred to the Multi-District Litigation Panel on April 16, 2006. (Doc. #16). This matter was remanded and reassigned to the undersigned on September 5, 2013. (Doc. #17; Doc. #18).

Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999). Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. Celotex, 477 U.S. at 322-23. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact

finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

Discussion

    *i.    Whether Bennett Lacks Standing?*

Under Florida law, the party in interest for a wrongful death action is the personal representative of the decedent. Veltmann v. Walpole Pharmacy, Inc., 928 F. Supp. 1161, 1164 (M.D. Fla. 1996) (citing Fla. Stat. § 768.20 (1995)). Forest Laboratories argues Bennett lacks standing to bring this lawsuit because he is not the personal representative of Terri Renè's estate. (See Doc. #79-57). Bennett filed a Notice of Appointment as Personal Representative on March 25, 2015. (See Doc. #133). This notice indicates Bennett was appointed as the personal representative of Terri Renè's estate. (Doc. #133). Since Bennett is now the official personal representative of Terri Renè's estate, he has standing to pursue this action. See Koho v. Forest Labs., Inc., No. C05-667RSL, 2015 WL 1565889, at *3 (W.D. Wash. Apr. 8, 2015) (finding plaintiff's failure to become the representative earlier was not fatal to her action). On this issue, the motion is due to be denied.

    *ii.    Whether the claims are barred because Forest Laboratories did not Manufacture or Sell Lexapro Tablets Ingested by Terri Renè?*

Forest Laboratories argues Bennett's claims are based on an inaccurate premise that Forest Laboratories designed and manufactured Lexapro. (See Doc. #1, at ¶¶28, 37). Forest Laboratories asserts it did not manufacture or distribute any Lexapro tablets ingested by Terri Renè.[2] Forest Laboratories argues since it did not manufacture or sell

---

[2] Rather, Forest Laboratories Ireland Limited manufactures Lexapro tablets. (See Doc. #108-7, at ¶4).

4

Lexapro, it cannot be liable in this case. (Doc. #76, at ¶3). Forest Laboratories relies on Guarino v. Wyeth LLC, No. 8:10-cv-2885, 2012 WL 1138631 (M.D. Fla. Apr. 3, 2012), aff'd 719 F.3d 1245 (11th Cir. 2013) to support its argument

In response, Bennett argues Forest Laboratories is the key player in the chain of distribution of Lexapro, and as a result is liable in this case. Bennett argues Forest Laboratories is the key player because it markets, drafts the warnings, and is the FDA sponsor for Lexapro. (See Doc. #41-14, at ¶3; Doc. #108-7, at ¶¶5-6). Bennett argues no entity can sell or distribute a drug without support of a sponsor. Bennett relies on several cases. See Samuel Friedland Family Enters. v. Amoroso, 630 So.2d 1067 (Fla. 1994); Hunnings v. Texaco, Inc., 29 F.3d 1480 (11th Cir. 1994); Ugaz v. Am. Airlines, Inc., 576 F. Supp. 2d 1354 (S.D. Fla. 2008); Lane v. Int'l Paper Co., 545 So.2d 484 (Fla. 1st DCA 1989); Rivera v. Baby Trend, Inc., 914 So.2d 1102, 1104 (Fla. 4th DCA 2005).

Upon consideration of this issue, the Court finds the motion is due to be denied. In Florida, under the rule of strict liability, a product may be defective by an inadequate warning. Faddish v. Buffalo Pumps, 881 F. Supp. 2d 1361, 1369 (S.D. Fla. 2012) (citations omitted). In addition, in Florida, an entity is negligent when it fails to warn about the risks involved in the reasonably foreseeable use of its product. Id. Here, Forest Laboratories admits it markets, drafts the warnings, and is the FDA sponsor for Lexapro. In light of its Lexapro responsibilities, the claims against it are not barred. Forest Laboratories does not need additional roles, like designing and manufacturing Lexapro, to be potentially liable. If the Court held otherwise, it would be going against traditional product liability rationale. Id. ("The rationale underpinning the general rule of strict liability is that it logically and fairly places the loss caused by a defective product on those who

create the risk and reap the profit by placing such a product in the stream of commerce, with the expectation that these entities have the greatest incentive and resources to control and spread the risk of harm posed by the product.").

In addition, the Court finds the Guarino case is distinguishable. The plaintiff in Guarino ingested a generic drug but sued the brand-name drug manufacturer pursuant to product liability theories. Id. at *1. Since the Guarino plaintiff did not ingest a brand-name drug, the brand-name manufacturer was entitled to summary judgment because it did not manufacture or sell the product used by the plaintiff. Id. (citing Metz v. Wyeth LLC, 830 F. Supp. 2d 1291 (M.D. Fla. 2011)). Here, Terri Renè did not consume a generic form of Lexapro.[3] Forest Laboratories was heavily involved with the warnings associated with Lexapro, the drug ingested by Terri Renè. As a result, the Court cannot rely on Guarino as a proper basis to grant summary judgment.

    iii.    *Whether the claims are barred by Florida Statute § 768.1256?*

Forest Laboratories argues all claims are barred pursuant to Florida Statute § 768.1256 because it complied with all federal regulations governing the manufacture and sale of Lexapro. Forest Laboratories asserts Bennett has no evidence that its Lexapro product was not in compliance with any applicable regulation. Moreover, since it received FDA approval to market Lexapro, Forest Laboratories asserts it is entitled to summary judgment. Forest Laboratories relies on two cases for support. See Wyeth v. Levine, 139 S.Ct. 1187, 1210 (2009); In re Aredia and Zometa Prods. Liab. Litig., No. 3:06-md-1760,

---

[3] The generic version of Lexapro was not approved until 2012, as a result, it is clear to the Court that Forest Laboratories is not the generic manufacturer and it does not maintain that it is the generic manufacturer. See **www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm296006.htm**

2009 WL 2497229 (M.D. Tenn. Aug. 13, 2009), aff'd Emerson v. Novartis Pharms. Corp., 446 Fed. Appx. 733 (6th Cir. 2011).

In response, Bennett argues the Florida Statute also provides him with a rebuttable presumption. See Fla. Stat. § 768.1256(2). Bennett argues FDA approval is not tantamount to compliance. Bennett argues the FDA statute and regulations governing approval are not designed to prevent the type of harm that is alleged in this case. Bennett also argues the manufacturing company is responsible for its labels at all times. Since labels should be amended when there is reasonable evidence of a serious hazard and Bennett contends Forest Laboratories failed to alter its label with reasonable knowledge of a serious hazard, Bennett argues summary judgment is inappropriate. In addition, one of Bennett's expert witnesses, Dr. Michael Hamrell, is expected to opine that Forest Laboratories had a duty to add a suicidality warning by June 2001, before Terri Renè consumed Lexapro. To support his arguments Bennett relies on several cases. See Rydzewski v. DePuy Orthopaedics, Inc., No. 11-80007-Civ, 2012 WL 7997961 (S.D. Fla. Aug. 14, 2012); Kaufman v. Wyeth, LLC, No. 1:02-CV-22692, 2011 WL 10483576 (S.D. Fla. Aug. 15, 2011); In re Celexa & Lexapro Prods. Liab. Litig., MDL No. 1736, 2013 WL 791784 (E.D. Mo. Mar. 4, 2013).

The Court first turns to the Florida Statute at issue. It states,

(1) In a product liability action brought against a manufacturer or seller for harm allegedly caused by a product, there is a rebuttable presumption that the product is not defective or unreasonably dangerous and the manufacturer or seller is not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that allegedly caused the harm:
(a) Complied with federal or state codes, statutes, rules, regulations, or standards relevant to the event causing the death or injury;
(b) The codes, statutes, rules, regulations, or standards are designed to prevent the type of harm that allegedly occurred; and

>  (c) Compliance with the codes, statutes, rules, regulations, or standards is required as a condition for selling or distributing the product.
>
>  (2) In a product liability action as described in subsection (1), there is a rebuttable presumption that the product is defective or unreasonably dangerous and the manufacturer or seller is liable if the manufacturer of seller did not comply with the federal or state codes, statutes, rules, regulations, or standards which:
>  (a) Were relevant to the event causing the death or injury;
>  (b) Are designed to prevent the type of harm that allegedly occurred; and
>  (c) Require compliance as a condition for selling or distributing the product.
>
>  (3) This section does not apply to an action brought for harm allegedly caused by a drug that is ordered off the market or seized by the Federal Food and Drug Administration.

Fla. Stat. § 768.1256.

The Court finds the statute is clear in that it provides rebuttable presumptions as each party argues. Nonetheless, since there is a factual issue as to whether Forest Laboratories should have updated its warning label before Terri Renè's consumption of Lexapro in light of reasonable knowledge of a serious hazard, there is a factual issue as to whether Forest Laboratories complied with FDA regulations. There is an outstanding issue as to which rebuttable presumption is appropriate in light of the facts. The Court finds FDA approval of a drug label does not necessarily indicate a drug complies with FDA statute and regulations because a manufacturer has a continuing obligation to ensure warning labels are sufficient. There is sufficient evidence to support Bennett's argument, such as Hamrell's potential testimony, to survive this motion for summary judgment. See Kaufman, 2011 WL 10483576, at *7 (finding summary judgment was not appropriate pursuant to the GRD defense because defendant failed to explain how FDA approval necessarily indicates that the drug complied with the relevant regulations and plaintiff provided rebuttable evidence, including expert testimony); see generally

8

Rydzewski, 2012 WL 7997961 at *2 (finding, even assuming arguendo that the GRD presumption applies, the plaintiffs provided sufficient evidence to rebut that presumption for purposes of summary judgment) (citation omitted).

  iv. *Whether Forest has a duty to provide the warnings Bennett advocates?*

Forest Laboratories argues it did not have a duty to provide the warnings Bennett advocates for in this litigation. Forest Laboratories argues this is because it did not manufacture or distribute Lexapro, did not have a duty to warn about purported side effects that are not scientifically supported, did not have a duty to provide warnings that would have been blocked by the FDA, did not have a duty to warn about risks that are not associated with Lexapro. Forest Laboratories points to FDA announcements and amicus brief to show that FDA would not have approved of heightened and stronger warning label. (See Doc. #78-39; Doc. #79-24). In addition, Forest Laboratories argues Bennett's proposed monitoring instruction fails because it is not an inherent danger, and such monitoring language is not appropriate for warning labels. Forest Laboratories argues there is no state law duty to provide instructions to physicians regarding the monitoring of risks inherent in psychiatric disorders such as depression. Forest Laboratories points to a case for authority. Pinchinat v. Graco Children's Prods., Inc., 390 F. Supp. 2d 1141 (M.D. Fla. 2005).

In response, Bennett argues Forest Laboratories is reiterating its motion for summary judgment based on preemption, (see Doc. #73), as to why it thinks it does not have a duty to warn about the risks of suicidality associated with Lexapro. Bennett turns to Forest Laboratories' Answer for support of his positon. (See Doc. #41-14). Bennett avers Forest Laboratories admits there is a 1990 article regarding a possible link between

9

the SSRI drug and suicidal ideations, Lexapro is a SSRI, Forest Laboratories is aware of a case where a jury found Paxil could cause some people to commit homicide or suicide, the FDA required in 2004 a heightened box warning that mentioned suicidality, and the FDA required direct-to-consumer warnings in the format of Patient Medication Guides and manufacturers to alter warnings before receiving FDA approval.

Upon consideration and in review of the record in the light most favorable to Bennett, the Court disagrees with Forest Laboratories contentions. For the reasons previously asserted in this order, the Court finds Forest Laboratories did have a duty to warn. Whether the warnings were sufficient at the time is an issue for the jury. Despite the amicus brief and FDA announcement there is no clear evidence that FDA would not have approved of a heightened warning. (See generally Doc. #138). Whether the monitoring language is appropriate does not negate other proposed language as it relates to suicide in adults. The Court finds summary judgment as to this issue is inappropriate.

    v.    Whether Bennett can meet his causation burden of proof?

        a. <u>Proximate Causation</u>

Forest Laboratories argues it does not have a duty to warn the patient of potential adverse effects of its medications. Rather, Forest Laboratories argues it has a duty to warn the treating physician. Forest Laboratories asserts Terri Renè's treating physician, Lukasiewicz, at the time she prescribed Lexapro to Terri Renè, knew Lexapro and other SSRI drugs caused or contributed to suicidality in patients. (See Doc. #79-75, at 9). Forest Laboratories argues Lukasiewicz had substantially the same knowledge as the warnings in which Bennett argues should have been used at the time Terri Renè was prescribed Lexapro. Forest Laboratories argues Lukasiewicz testified she would not prescribe

Lexapro to a person who was having suicidal thoughts. (See Doc. #79-75, at 23).  Forest Laboratories argues Lukasiewicz monitored Terri Renè after she started taking Lexapro. Lukasiewicz asserted in her deposition that it is her practice to monitor patients taking Lexapro today and was her practice with regard to Terri Renè. (Doc. #79-75, at 21). Lukasiewicz testified in a deposition that Terri Renè denied feeling suicidal at least three times. (See Doc. #79-75, at 22). In light of this information, Forest Laboratories asserts the causal chain is broken. In addition, Forest Laboratories argues a warning to monitor the patient would not have resulted in a different outcome here. Forest Laboratories relies on several cases to support its argument. See E.R. Squibb v. Sons v. Fames, 697 So.2d 825, 827 (Fla. 1997); Felix v. Hoffman-LaRoche, Inc., 540 So.2d 102 (Fla. 1989); Higgins v. Forest Labs, 48 F. Supp. 3d 878 (W.D. Va. Sept. 8, 2014).

In response, Bennett argues summary judgment is inappropriate because Lukasiewicz now counsels depressed patients starting on SSRI drugs more emphatically about the possible onset of suicidal thinking. (Doc. #89-3, at 15). Bennett argues Forest Laboratories could have done more to "bring home" the warning to the doctors, for example by issuing "Dear Doctor" letters like its competitor Wyeth. (See Doc. #41-14, at ¶25). Bennett argues this is especially true here where Lukasiewicz places particular importance on "Dear Doctor" letters. (Doc. #89-3, at 3). Bennett argues Forest Laboratories could have also instructed its sales representatives to alert doctors about new warning information rather than avoid raising the topic of Lexapro induced suicidality. (Doc. #89-4).

Furthermore, Bennett asserts Lukasiewicz testified she would have complied with the March 2004 FDA warning, as it relates to warning patient's families about the risk of

suicide. (Doc. #89-3, at 15). Lukasiewicz asserts she would have given a more emphatic warning to Terri Renè and she would have directly warned Terri Renè's husband knowing what she knows now. (Doc. #89-3, at 15-16). In addition, Bennett confirms he would have monitored his wife with the current monitoring steps as outlined in the current warning. (Doc. #89-5).

Also, knowing what she knows now, Lukasiewicz asserts she would have explored other treatment options for Terri Renè, such as prescribing another drug or providing greater emphasis on psychotherapy. (Doc. #89-3, at 16-18). Lukasiewicz asserts she was not aware of the true risk of suicidality and worsening depression. (Doc. #89-3, at 18). That is, at the time she treated Terri Renè, the idea that using Lexapro to treat a depressed individual may cause the individual to commit suicide was "new information" to her. (Doc. #89-3, at 22-23). Lukasiewicz considered the new Lexapro warning information provided after Terri Renè's death was much different than what was provided to her at the time she treated Terri Renè. (Doc. #89-3, at 26). Bennett relies on several cases for support. See Levine v. Wyeth, Inc., No. 8:09-cv-854-T-33AEP, 2010 WL 5137424 (M.D. Fla. Dec. 10, 2010); Dimieri v. Medicis Pharm. Corp., No. 2:14-cv-176-FtM-38DNF, 2014 WL 3417364 (M.D. Fla. July 14, 2014); Arnold v. Novartis Pharm. Corp, No. 8:06-cv-1709-T-23MAP, 2014 WL 2958600 (M.D. Fla. July 1, 2014); Gunether v. Novartis Pharm. Corp., No. 6:08-cv-456-Orl-31DAB, 2013 WL 4648449 (M.D. Fla. Aug. 29, 2013); Munroe v. Barr Labs., Inc., 670 F. Supp. 2d 1299 (N.D. Fla. 2009); In re Levaquin Prods. Liab. Litig., 700 F.3d 1161 (8th Cir. 2012); Giles v. Wyeth, Inc., 500 F. Supp. 2d 1063 (S.D. Ill. 2007).

Despite the learned intermediary rule, the Court finds summary judgment is not appropriate here. This case is similar to cases Bennett relies on, such as Levine. See generally Levine, 2010 WL 5137424. Here, Lukasiewicz indicates her warnings to Terri Renè, Terri Renè's family, treatment plan, choice to prescribe Lexapro, and the like would have been different had she known the risk between Lexapro and suicidality similar to the warnings released by the FDA in March 2004. Moreover, Lukasiewicz testified that she would have warned Terri Renè and her family "more emphatically" about the risks involved. Such evidence is sufficient to preclude summary judgment. Id. at *6.

    b. *Cause of Fact*

Forest Laboratories argues Bennett cannot prove Terri Renè's use of Lexapro was the cause in fact of her suicide. Forest Laboratories asserts expert testimony is necessary to make a showing of specific causation. Since Forest Laboratories moved to exclude Bennett's specific causation expert, Dr. George Glass, Forest Laboratories asserts Bennett does not have the required testimony and cannot prove cause in fact. (See Doc. #75). The motion for summary judgment on this basis is due to be denied. Since the filing of the instant motion, the undersigned denied Forest Laboratories' motion to exclude Dr. Glass. (See Doc. #158).

Accordingly, it is now **ORDERED:**

Forest Laboratories, LLC's Motion for Summary Judgment (Doc. #74) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 14th day of April, 2015.

*[signature: Sheri Polster Chappell]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record